

08 CV 6464

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL WELCH, Individually And On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>vs.<br><br>WACHOVIA CORPORATION, G. KENNEDY THOMPSON, JOHN D. BAKER, II, PETER C. BROWNING, JOHN T. CASTEEN, III, JEROME A. GITT, WILLIAM H. GOODWIN, JR, RUTH G. SHAW, MARYELLEN C. HERRINGER, ROBERT A. INGRAM, DONALD M. JAMES, MACKLEY J. MCDONALD, JOSEPH NEUBAUER, TIMOTHY D. PROCTOR, ERNEST S. RADY, LANTY L. SMITH, VAN L. RICHEY, DONA DAVIS YOUNG, BENJAMIN J. JOLLEY, WACHOVIA BENEFITS COMMITTEE, ANGELA S. MULL, and JOHN DOES 1-10,<br><br>           Defendants. | Civil Action No. _____<br><br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974** |

Plaintiff Michael Welch ("Plaintiff"), individually and on behalf of a class of similarly situated participants in and beneficiaries of the Wachovia Savings Plan (the "Plan") alleges the following based upon the investigation of counsel, and upon personal knowledge as to facts pertaining to Plaintiff and on information and belief as to all other facts:

## NATURE OF THE ACTION

1.      This is a class action brought pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132, against fiduciaries of the Plan who are and were responsible for the investment of the assets and the administration of the Plan between the dates of January 23, 2007 through and including the present (the "Class

Period"). During the Class Period, the Plan's fiduciaries, including Wachovia Corporation and its subsidiaries (collectively, "Wachovia" or the "Company") and certain of its senior officers and directors, breached their fiduciary duties owed to the Plan's participants and beneficiaries (collectively, the "Participants"), causing the loss of hundreds of millions of dollars of Participants' retirement savings.

2.     Plaintiff was a Wachovia employee and participant in the Plan during the Class Period. As a participant, Plaintiff, like other members of the Class, was entitled to set aside a certain percentage of his annual base salary for investment in various investment options provided by the Plan. Among the investment options in the Plan was the Wachovia Stock Fund or Wachovia Corporation Common Stock Fund (collectively, the "Company Stock Fund") which invested primarily in Wachovia common stock.

3.     The Plan has two main components: (a) a component in which Participants make voluntary, pre-tax contributions to the Plan out of their base pay (the "Participant Contribution Component"), and (b) a component in which the Company matches a portion of the Participants' contribution to the Plan (the "Company Match").

4.     Throughout the Class Period, the Plan invested heavily in Wachovia common stock. As of June 27, 2008, the Plan held approximately 14% of its total assets in Wachovia common stock. Because the Plan's holdings in Wachovia common stock comprised a significant percentage of the overall value of the assets that the Plan held on behalf of the Participants, the long-term retirement savings of Participants were dependent, to a substantial degree, on the performance of Wachovia common stock. So too were Participants' retirement savings dependent on the related need for prudent fiduciary decisions by Defendants, concerning such a large, ongoing investment of the Plan's assets.

5.     Throughout the Class Period, Wachovia engaged in serious mismanagement and improper sales and marketing practices which made the Plan's continued investment in Wachovia stock imprudent. Indeed, Defendants knew or should have known that the Company's stock was artificially inflated, due to: (a) the fact that the Company's acquisition of Golden West Financial Corporation ("Golden West") exposed the Company to tremendous losses from the meltdown of the subprime mortgage market; (b) the fact that the Company had failed to adequately and timely record accruals for losses from its exposure to delinquent subprime mortgages; and (c) the fact that the Company had far greater exposure than previously disclosed to anticipated losses and defaults in its home loan portfolio.

6.     Although Defendants knew or should have known of the above improper business practices, and although Defendants knew or should have known that that the heavy investment of retirement savings in Company stock would inevitably result in significant losses to the Plan, and consequently, to its participants, Defendants did nothing to protect the heavy investment of Plan participants' retirement savings in Wachovia stock.

7.     Moreover, the Plan's fiduciaries knew or should have known that during the Class Period, Wachovia had made a series of material misrepresentations and omissions regarding: (a) Wachovia's heavy exposure to subprime mortgage-related losses; (b) true risks associated with Wachovia's acquisition of Golden West; (c) Wachovia's true financial condition, particularly with respect to losses stemming from its subprime mortgage lending.

8.     During the Class Period, based in part on such statements, Participants believed that Wachovia stock was a financially sound investment for their retirement accounts. In turn, Participants continued to allocate significant amounts of their individual contributions to Wachovia stock and to maintain their assets in that investment option.

3

9.     However, beginning on April 14, 2008, Defendants began publicly disclosing the full extent of the losses suffered by the Company during the Class Period.  Upon such disclosure, Wachovia common stock dropped from an April 11, 2008 high of $28.38 per share to a closing price of $25.55 on April 14, 2008 - a drop of approximately 55% from its closing price of $56.65 per share on January 23, 2008, the first day of the Class Period.  The price of Wachovia common stock continued to plummet throughout the Class Period, reaching a closing price of $9.08 on July 15, 2008, marking a total decline of  approximately **84%** from its trading price on the first day of the Class Period.  A July 28, 2008 Wall Street Journal news article entitled *Wachovia Securities Probed on Marketing* confirmed that, "[s]tock in [Wachovia] has fallen 80% in the past year…as the company takes large losses on its loans."

10.     Because of the Plan's heavy investment in Wachovia common stock throughout the Class Period, Defendants' breaches of fiduciary duties caused the Plans to suffer substantial losses during – losses that significantly reduced the overall value of the Plan's assets and Participants' vested retirement benefits.

11.     Moreover, according to that same July 28 Wall Street Journal news article, "a team of 10 state securities regulators showed up at the St. Louis headquarters of Wachovia Securities [a subsidiary of Wachovia] on [July 17] to demand documents and conduct interviews about the company's sales and marketing practices."[1]  In addition, Missouri Secretary of State Robin Carnahan's office has also subpoenaed more than a dozen Wachovia Securities agents and executives.

---

[1]     According to the article, the group of regulators includes "investigators from Missouri, Illinois, Massachusetts, New Jersey, Pennsylvania and other states, all of which are part of a task force of state regulators."

4

12.     Plaintiff's claims arise from the failure of Defendants, who are fiduciaries of the Plan, to act solely in the interest of the Participants, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period as required by ERISA.    Defendants breached their fiduciary duties owed to the Plan and the Participants under ERISA by, among other things:

- Selecting and maintaining the Company Stock Fund as an investment alternative under the Plan and permitting the Plan to buy and hold shares of Wachovia common stock during the Class Period when it was an imprudent investment;

- Encouraging Wachovia employees to invest in the Company Stock Fund;

- Continuing to invest the Company Match in the Company Stock Fund and failing to divest the Plan from shares of Wachovia stock when continuing to do so became imprudent as a result of the Company's over exposure to a deteriorating housing market;

- Abdicating their continuing duty to review, evaluate and monitor the suitability of the Plan's investment in the Company Stock Fund; and

- Failing to provide accurate, material information to Participants about Wachovia's risks, losses, and exposure to the subprime lending meltdown, necessary to enable Participants to make informed investment decisions concerning their contributions invested in the Company Stock Fund.

13.     As a result of Defendants' breaches of their fiduciary duties, Plaintiff and members of the Class have suffered substantial losses of retirement savings and anticipated retirement income from the Plan.    As such, under ERISA, Defendants are obligated to restore to

the Plan the losses that resulted from their breaches of their fiduciary duties pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

14.    In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

## JURISDICTION AND VENUE

15.    This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).    This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).    In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

16.    ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are residents of the United States, and this Court therefore, has personal jurisdiction over them.  This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the Southern District of New York.

17.    Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary places of business in this district.

## THE PARTIES

### A.  Plaintiff

18.  Plaintiff Michael Welch is a resident of the State of Arizona and is and was at all relevant times a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).  During the Class Period, Plaintiff held units of the Company Stock Fund in his individual Plan account.

### B.  Defendants

### *Wachovia*

19.  Defendant Wachovia is a corporation organized under the laws of North Carolina with its corporate headquarters located at 301 South College Street Suite 4000 One Wachovia Center Charlotte, North Carolina 28288-0013.  Wachovia is the nation's fourth largest bank holding company and third largest full-service retail brokerage firm.  Wachovia provides commercial and retail banking services, and other financial services in the United States and internationally.  Its retail banking presence is predominantly on the East Coast but also stretches across the Southeast and west to Texas and California.  As of November 19, 2007, Wachovia operated 3,400 retail financial centers in 21 states, as well as 40 international offices.  According to its corporate website, Wachovia's customers include 15 million households and businesses; 14.7 million online product and service enrollments; and 4.8 million active online customers.

20.  During the Class Period, Wachovia was the Sponsor and Administrator of the Plan and exercised discretionary authority over the Plan, acting through its Board of Directors (the "Board"), its officers, and the Wachovia Benefits Committee.  Throughout the Class Period, Wachovia exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

7

21.    During the Class Period, Wachovia was a named and/or *de facto* fiduciary of the Plan. Wachovia also had the authority and discretion to appoint, monitor and remove officers and employees that performed fiduciary functions with respect to the Plan, including the Director Defendants (defined below) and, acting through the Board, to appoint, monitor and remove members of the Benefits Committee.

### *The Director Defendants*

22.    The business and affairs of the Company are managed under the direction of the Board, including with respect to the Company's role as a fiduciary of the Plan. One of the Board's many roles or functions is the power to appoint the members of the Benefits Committee. Upon information and belief, the Board likewise exercised discretionary authority or discretionary control with respect to the appointment of the Plan's fiduciaries, and with respect to the management of the Plan. Based on the above, the Board is a fiduciary with respect to the Plan because it exercised discretionary authority or discretionary responsibility in the administration of the Plan, exercised discretionary authority or control with respect to the management of the Plan's assets, and exercised discretionary authority or control with respect to the appointment of other fiduciaries of the Plan.

23.    Defendant G. Kennedy Thompson ("Thompson") has served as Wachovia's Chief Executive Officer since 2000 and as its President since 1999. Defendant Thompson has also served as a director of Wachovia since 1999 and as Chairman of the Board since 2003. Defendant Thompson was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

24.    Defendant John T. Casteen, III ("Casteen") has served as a director of Wachovia since 2001. Defendant Casteen was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

25.    Defendant Maryellen C. Herringer ("Herringer") has served as a director of Wachovia since 2006. Defendant Herringer was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

26.    Defendant Joseph Neubauer ("Neubauer") has served as a director of Wachovia since 1996. Defendant Neubauer was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

27.    Defendant Timothy D. Proctor ("Proctor") has served as a director of Wachovia since 2006. Defendant Proctor was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

28.    Defendant Van L. Richey ("Richey") has served as a director of Wachovia since 2004. Defendant Richey was a fiduciary of the Plan within the meaning of ERISA in that he

exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

29.     Defendant Dona Davis Young ("Young") has served as a director of Wachovia since 2001. Defendant Young was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

30.     Defendant Ernest S. Rady ("Rady") has served as a director of Wachovia since 2006. Defendant Rady was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

31.     Defendant Jerry Gitt ("Gitt") has served as a director of Wachovia since 2006. Defendant Gitt was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

32.     Defendant John D. Baker, II ("Baker") has served as a director of Wachovia since 2001. Defendant Baker was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

33.    Defendant Peter C. Browning ("Browning") has served as a director of Wachovia since 2001. Defendant Browning was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

34.    Defendant Donald M. James ("James") has served as a director of Wachovia since 2004. Defendant James was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

35.    Defendant John C. Whitaker, Jr. ("Whitaker") has served as a director of Wachovia since 2001. Defendant Whitaker was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

36.    Defendant William H. Goodwin, Jr. ("Goodwin") has served as a director of Wachovia since 2001. Defendant Goodwin was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

37.    Defendant Robert A. Ingram ("Ingram") has served as a director of Wachovia since 2001. Defendant Ingram was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

38.    Defendant Mackey J. McDonald ("McDonald") has served as a director of Wachovia since 1997. Defendant McDonald was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

39.    Defendant Ruth G. Shaw ("Shaw") has served as a director of Wachovia since 1990. Defendant Shaw was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

40.    Defendant Lanty L. Smith ("Smith") has served as a director of Wachovia since 1987. Defendant Smith was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to management and administration of the Plan and management and disposition of the Plan's assets as well as the selection of a committee of individuals to serve at the pleasure of the Board to administer the Plan.

41.     Defendants Neubauer, Proctor, Richie, Young, Rady, Gitt, Baker, Browning, James, Whitaker, Goodwin, Ingram, McDonald, Shaw and Smith are collectively referenced herein as the "Director Defendants."

### *The Wachovia Benefits Committee Defendants*

42.     Defendant Wachovia Benefits Committee (the "Benefits Committee") is a committee of Wachovia employees appointed by the Board and delegated the day-to-day responsibility for the administration of the Plan. The Benefits Committee was the principal group responsible for management and evaluation of the investment of the Plan's assets during the Class Period. The Benefits Committee is a "Named Fiduciary" for purposes of Section 402(a)(2) of ERISA, as both the Form 5500 filed by Wachovia with the Internal Revenue Service ("IRS") and the Department of Labor ("DOL") (the "Form 5500") and the Form 11-K filed by Wachovia with the Securities and Exchange Commission ("SEC") on June 30, 2008 (the "11-K") name the Benefits Committee as the "Plan Administrator."

43.     Defendant Benjamin J. Jolley served as Wachovia's Senior Vice-President-Human Resources and a member of the Benefits Committee during the Class Period. Defendant Jolley signed all three Form 11-Ks which Wachovia filed with the SEC during the Class Period. Defendant Jolley was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that he exercised discretionary authority with respect to the management and administration of the Plan and/or management and disposition of the Plan's assets.

44.     Defendant Angela S. Mull served as an Assistant Vice President of Wachovia and signed the Form 5500 as "administrator" of the Plan. Defendant Mull was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that she exercised

discretionary authority with respect to the management and administration of the Plan and/or management and disposition of the Plan's assets.

**Defendant John Does 1-10**

45.    Without limitation, unknown "John Doe" Defendants 1-10 include other individuals, including members of the Benefits Committee, as well as Company officers, directors and employees who are or were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.   The identities of the John Doe Defendants are currently unknown to Plaintiff; once their identities are ascertained, Plaintiff will seek leave to join them to the instant action under their true names.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action, pursuant to Rule 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who are participants in or beneficiaries of the Plan at any time between January 23, 2007, and the present and whose accounts included investments in Wachovia Stock.

47.    The members of the Class are so numerous that joinder of all members is impracticable.  According to the Form 5500, there were 103,460 participants in the Plan at the beginning of the Plan year 2004.  While the exact number of current Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are, at a minimum, several hundred thousands of members of the Class who participated in, or were beneficiaries of, the Plan and held Wachovia common stock during the Class Period in their individual Plan accounts.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants each owed a fiduciary duty to the Plaintiff and the Class;

(b)     Whether Defendants breached their fiduciary duties owed to the Plaintiff and the Class by failing to act prudently and solely in the interests of the Participants;

(c)     Whether Defendants violated ERISA; and

(d)     Whether Plaintiff and members of the Class have sustained damages and, if so, what is the appropriate measure thereof.

49.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class members each sustained damages arising from Defendants' wrongful conduct in violation of ERISA.

50.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action and complex litigation under federal law. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Class action status in this ERISA action is warranted under Fed. R. Civ. P. 23(b)(1)(B) because prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the action, or substantially impair or impede their ability to protect their interests.

52.     Class action status is also warranted under the other subsections of Fed. R. Civ. P. 23(b) because:

(a)      Prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants;

(b)      Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class as a whole; and

(c)      Questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## NATURE OF THE PLAN

53.      The Plan is an employee benefit Plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

54.      The Plan are "defined contribution" or "individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provide for individual accounts for Participants and for benefits based solely upon the amount contributed to Participants' accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account. While the Plan are not a party to this action, pursuant to ERISA, the relief requested in this action is for the benefit of the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)

55.      The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is neither a defendant nor a plaintiff.

Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants and beneficiaries.

56.     The Plan is sponsored by Wachovia and administered by Wachovia through various committees and individuals, including, without limitation, the Benefits Committee. According to the 11-K, the Plan "is designed to promote savings for retirement."

57.     The Plan provides for both participant elective deferrals and employer matching contributions.

58.     Pursuant to the Plan, an employee is eligible to make contributions beginning on the first of the month following the month in which the employee completes one full calendar month of service.

59.     However, the employee is eligible to receive employer matching contributions after one year of service

60.     Participants may make tax deferred contributions of up to 30% of the employee's benefits eligible compensation as defined by the Plan.

61.     The maximum percentage of employer matched contributions is determined annually be the Wachovia Human Resources and Corporate Relations Director.  The employer's matching contribution cannot exceed 6% of a participant's benefits eligible compensation.

62.     Participants are vested immediately in their contributions and in employer contributions.

63.     In accordance with Plan provisions, each participant's account is credited with the Plan earnings on a daily basis.

64.    Employer and employee contributions are invested pursuant to participants' investment directives, except that the first 1% of Company's matching contributions is invested in Wachovia common stock.

65.    The Plan offers several investment options, including the Company Stock Fund, which invests primarily in Wachovia common stock.

66.    Because of the Plan's heavy investment in the Company Stock Fund, Defendants' fiduciary breaches have caused the Plan to suffer substantial losses during the Class Period.

## DEFENDANTS' FIDUCIARY STATUS

67.    During the Class Period, upon information and belief, Defendants had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets.

68.    During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

69.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). Upon information and belief, the Company and the Benefits Committee were named fiduciaries of the Plan.

70.    Instead of delegating fiduciary responsibility for the Plan to external service providers, Wachovia chose to internalize certain vital aspects of this fiduciary function.

71.    Upon information and belief, the Company administered the Plan and the Plan's assets through its Board and the Benefits Committee, which had discretionary authority to manage and control the operation and administration of the Plan and investment of Plan assets, as noted and described above. The Company, through the Board was, upon information and

18

belief, responsible for appointing, evaluating and monitoring the Benefits Committee.

**Additional Fiduciary Aspects of Defendants' Actions/Inactions**

72.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under

§ 402(a)(1), but also any other persons who act in fact as fiduciaries, i.e., performed fiduciary

functions.  ERISA § 3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i), provides that a person is a fiduciary

"to the extent . . . he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management of

disposition of its assets . . . ."  During the Class Period, Defendants performed fiduciary

functions under this standard, and thereby also acted as fiduciaries under ERISA.

73.    Further, ERISA mandates that pension plan fiduciaries have a duty of loyalty to

the plan and its participants which includes the duty to speak truthfully to the Plan and its

participants when communicating with them.  A fiduciary's duty of loyalty to plan participants

under ERISA includes an obligation not to materially mislead, or knowingly allow others to

materially mislead, plan participants and beneficiaries.  "[L]ying is inconsistent with the duty of

loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Varity Corp. v.

Howe*, 516 U.S. 489, 506 (1996).

74.    Moreover, an ERISA fiduciary's duty of loyalty requires the fiduciary to correct

the inaccurate or misleading information so that plan participants will not be injured.  *See, e.g.*,

*Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) ("[An] ERISA

fiduciary that knows or should have known that a beneficiary labors under a material

misunderstanding of plan benefits that will inure to his detriment cannot remain silent –

especially when that misunderstanding was fostered by fiduciary's own material representations

or omissions."); *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004); *Bixler v.*

19

*Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993); *In re JDS Uniphase Corp. ERISA Litigation*, 2005 WL 1662131 (N.D. Cal. 2005).

75. A plan fiduciary also "has an affirmative duty to inform beneficiaries of circumstances that [as alleged herein] threaten the funding of benefits." *Acosta v. Pacific Enter.*, 950 F.2d 611, 619 (9th Cir. 1991).

76. During the Class Period, upon information and belief, Defendants made direct and indirect communications with the Plan's participants including statements regarding investments in Company stock. These communications included, but were not limited to, SEC filings, annual reports, press releases, and Plan documents (including Summary Plan Descriptions ("SPDs") and/or prospectuses regarding Plan/participant holdings of Company stock), which included and/or reiterated these statements. Upon information and belief, at all times during the Class Period, Wachovia's SEC filings were incorporated into and part of the SPDs, and/or a prospectus and/or any applicable SEC Form S-8 registration statements. Defendants also acted as fiduciaries to the extent of this activity.

77. Further, Defendants, as the Plan's fiduciaries, knew or should have known certain basic facts about the characteristics and behavior of the Plan's participants, well-recognized in the 401(k) literature and the trade press,[2] concerning investment in company stock, including

---

[2] Joanne Sammer, *Managed Accounts: A new direction for 401(k) plans*, Journal of Accountancy, Vol. 204, No. 2 (August 2007) (available at: http://www.aicpa.org/pubs/jofa/aug2007/sammer.htm); Roland Jones, *How Americans Mess Up Their 401(k)s*, MSNBC.com (June 20, 2006) (available at: http://www.msnbc.msn.com/id/12976549/); Bridgitte C. Mandrian and Dennis F. Shea, *The Power of Suggestion: Inertia in 401(k) Participation and Savings Behavior*, 116 Q. J. Econ. 4, 1149 (2001) (available at: http://mitpress.mit.edu/journals/pdf/qjec_116_04_1149_0.pdf); Nellie Liang & Scott Weisbenner, 2002, *Investor behavior and the purchase of company stock in 401(k) plan - the importance of plan design*, Finance and Economics Discussion Series 2002-36, Board of Governors of the Federal Reserve System (U.S.) (available at: http://www.federalreserve.gov/pubs/feds/2002/200236/200236pap.pdf).

that:

    (a)    Employees tend to interpret a match in company stock as an endorsement of the company and its stock;

    (b)    Out of loyalty, employees tend to invest in company stock;

    (c)    Employees tend to over-extrapolate from recent returns, expecting high returns to continue or increase going forward;

    (d)    Employees tend not to change their investment option allocations in the plan once made;

    (e)    No qualified retirement professional would advise rank and file employees to invest more than a modest amount of retirement savings in company stock, and many retirement professionals would advise employees to avoid investment in company stock entirely;

    (f)    Lower income employees tend to invest more heavily in company stock than more affluent workers, though they are at greater risk; and

    (g)    Even for risk-tolerant investors, the risks inherent to company stock are not commensurate with it rewards.

78.    Even though Defendants knew or should have known these facts, and even though Defendants knew of the significant investment of the Plan's funds in Company stock, they still disseminated inaccurate, incomplete and materially misleading statements Plan-wide regarding the Company's financial and operational health and future prospects, and/or did nothing to correct such statements.

### DEFENDANTS' FIDUCIARY DUTIES UNDER ERISA

79.    ERISA is a comprehensive statute covering virtually all aspects of an employee benefit plan, including retirement savings Plan, such as the Plan. The goal of ERISA is to protect the interests of a Plan's participants and their beneficiaries:

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit Plan and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of

conduct, responsibility, and obligation for fiduciaries of employee benefit Plan, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA § 2(b), 29 U.S.C. § 1001(b).

80.    Under ERISA, those responsible for employee benefit plan management stand in a fiduciary relationship to a Plan's participants.  Pursuant to ERISA, a "fiduciary" is defined broadly to include all persons or entities that are able to exercise discretionary authority over the management of a plan or the payment of benefits.  29 U.S.C. § 1002(21)(A).  ERISA requires strict fidelity and loyalty in the execution of a Plan's management.

81.    ERISA imposes on Defendants, who are responsible for the Plan, the requirement to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."   ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

82.    ERISA also imposes on Defendants responsible for the Plan a duty of loyalty, requiring the Defendants to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . for the exclusive purpose of . . . providing benefits to the participants and their beneficiaries."   ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(l)(A)(i).

83.    Other duties imposed upon Defendants who are fiduciaries under ERISA by virtue of their exercise of authority or control respecting the management of the Plan or disposition of Plan's assets, include but are not limited to:

      1.    The duty to investigate and evaluate the merits of decisions affecting the use and disposition of Plan's assets;

2.    The duty to evaluate all investment decisions with "an eye single" to the interests of the Participants;

3.    The duty to avoid placing themselves in a position where their acts as officers, directors, or employees of the Company will prevent their functioning with the complete loyalty to Participants demanded of them as fiduciaries and, if they find themselves in such a position, to seek independent, unconflicted advice;

4.    The duty, under appropriate circumstances, to monitor or influence the management of the companies in which the Plan own stock including, where appropriate, the obligation to bring a derivative action if the fiduciaries were or should have been aware that the officers and directors of the entities whose stock was held by the Plan had breached fiduciary duties owed their shareholders;

5.    To the extent that a party is responsible for appointing and removing fiduciaries, the duty to monitor those persons who have been named;

6.    The duty to disclose and inform of any material adverse information about the Company which duty entails, among other things: (1) a duty not to make materially false and misleading statements or misinform the Participants; (2) an affirmative duty to inform the Participants about material adverse factors which were affecting the Company any time the fiduciary knew or should have known, pursuant to his duty to investigate, that failing to make such a disclosure might be harmful; (3) a duty to convey complete and accurate information material to the circumstances of the Participants and their beneficiaries; (4) a duty to insure that investments were not purchased at a price above what the Defendants, but not the participants and beneficiaries, knew or should have known to be in excess of fair market value as defined in the relevant Treasury regulations and in most instances at a price which renders it improbable that the investments will bring a fair return commensurate with the prevailing rates; and (5) a duty to diversify the Plan's investments to minimize the risk of large loss to the Plan and the Participants;

7.    When a plan is composed of various investment funds, the duty to inform and disclose also includes the duty to impart to Participants material information which the fiduciary knows or should know is

sufficient to appraise the average plan participant of the comparative risks associated with investing in any particular investment; and

8.    The duty to diversify and/or cause the Plan's investments to be diversified in order to minimize the risk of large losses.

84.    ERISA permits the fiduciary function to be shared among various individuals and entities.  Given ERISA's functional conception of a fiduciary, absent formal discovery it is impossible to know which fiduciaries exercised which fiduciary functions.

85.    Insofar as the Plan was not  properly diversified funds and therefore more risky to the Participants, the Defendants had heightened fiduciary duties to the Participants with respect to the Plan's investment in Wachovia Stock, including heightened duties to disclose all material information relevant to investments in Wachovia Stock.

## FACTS BEARING ON DEFENDANTS' FIDUCIARY BREACHES

### The Subprime Mortgage Industry

86.    Subprime mortgage lending is defined as the practice of issuing high-interest or variable interest loans to customers with impaired or non-existing credit histories, who otherwise would not qualify for loans from mainstream lenders

87.    Typically, subprime borrowers have relatively low credit scores along with little or no money to apply to a down-payment on a home.  These individuals would usually be excluded from the mortgage market and, accordingly, would not have mortgages included in the secondary market.

88.    According to an article in USA Today from December 7, 2004, subprime mortgage lenders "offer products from fixed-rate mortgages to interest-only loans, where borrowers pay just the interest for a set number of years, or "80-20" loans, in which borrowers

finance a home with an 80% mortgage at one rate and the remaining 20% through a second loan." USA Today, "Subprime Loan Market Grows Despite Troubles," December 7, 2004.

89.    Subprime mortgage loans represent a greater risk to lenders than prime mortgage loans. For example, one product marketed by some subprime lenders is a Pay Option ARM, which is an adjustable rate mortgage with an interest rate that changes monthly and payments that change annually. The borrower can choose from a variety of payment options, including one that is below what would be paid in an interest-only mortgage. Selection of this option would result in negative amortization, meaning that the loan's principal would actually increase during this period. Increases in monthly payments are capped at 7.5% per year unless the principal balance of the loan is 115% of the original loan amount or 5 or 10 years have passed since the loan was made. In both cases, the loan will become fully amortizing (meaning interest and principal payments will be made like a traditional mortgage. The reversion to full amortization is referred to as a "reset" or "recast" and can result in a substantial increase in a borrower's monthly mortgage payment. If the borrower does not obtain a more favorable arrangement through refinancing, they may be in a position where they will be simply unable to meet their new mortgage payment.

90.    An additional product marketed by many subprime lenders is the 2/28 ARM, which is an adjustable rate mortgage that fixes rates for two years, and then resets to an ARM rate index value (e.g. the Treasury Bill rate or the London Inter-Bank Offering Rate (LIBOR)) plus a "margin" (fixed percentage points above the "index" rate) after the two-year mark. For example if the rate is 5% for two years but after two years, the index is 4% and the margin is 4.5%, a 5% loan becomes an 8.5% loan. As with the Pay Option ARM discussed above, if borrowers are unable to refinance the loan and obtain a more favorable arrangement, they may be

in a position where they cannot meet their new mortgage payment once their fixed mortgage loan resets.

91.     Rather than hold mortgage loans, generally, lenders sell subprime mortgages bundled into bonds and offered to individual and institutional investors.  Wachovia publicly expressed interest in subprime mortgage lenders in the Spring of 2006 when Defendant Thompson spoke publicly of adopting a higher risk profile and pushed Wachovia into investment areas like subprime mortgages with the acquisition of Golden West.  Thompson said "[Golden West's ] model of underwriting and then holding adjustable-rate loans with flexible terms, rather than selling them to secondary investors, was convincing."  See David Mildenberg, Wachovia's Lead Director Says Board Backs Thompson, Bloomberg.com (April 15, 2008) available at http://www.bloomberg.com/apps/news?pid=20601103&sid=amhFG4Tc3Dg&refer=news (accessed on April 15, 2008).

92.     As Wall Street's interest in the subprime mortgage market increased, lenders had an increased incentive to increase their volume of loans.  Too often, this had the effect of providing lenders with financial incentive to lower their underwriting standards and make more risky loans.  In other words, many lenders became less concerned with borrowers' ability to repay over the long term and more concerned with their mere volume of loans over the short term.  This is because lenders' profits largely depended on the quantity, rather than the quality of loans that they closed.  As a result, many loans were made to borrowers that exceeded the borrowers' ability to repay.

93.     The substantial increase in mortgage loan defaults has had a tremendous impact upon the mortgage market.  During the first half of 2007, dozens of lenders participating in the

subprime mortgage market went out of business as defaults and delinquencies on recent loans spiked.

94.     Thus, as home prices declined and interest rates began to rise in late 2006 and early 2007, the default rates for these mortgages rose as well.  For example, early defaults in the mortgages (within the first six months of securitization) rose from between the .5% to .75% range in 2003-2004 to over 2.5% in 2006.

95.     Throughout the Class Period, Defendants repeatedly issued inaccurate, incomplete and materially misleading statements to the Participants.  Although they knew or should have known that Wachovia common stock was artificially inflated, due to the Company's mammoth involvement in the securitized subprime mortgage market, Defendants continuously reassured Participants and did nothing to protect the heavy investment of their retirement savings in Wachovia stock.

96.     Wachovia Gambled on the Subprime Market

97.     Despite the fact that most investment banks recognized warning signs and reduced their exposure to collateralized debt obligations ("CDOs"), Wachovia inexplicably chose to charge forward and increase its entrenchment in the subprime mortgage market.  On May 7, 2006, the first day of the Class Period, Wachovia and Golden West announced that they had entered into an Agreement and Plan of Merger, that provides, among other things, for Golden West to be merged with and into a wholly-owned subsidiary of Wachovia (the "Merger").3

---

3       Wachovia's acquisition of Golden West was completed on October 1, 2006.

98.    Wachovia acquired Golden West for $25.5 billion, a company which, unbeknownst to Plaintiff and the Class, had substantial exposure to billions of dollars of losses related to problems within the subprime mortgage industry.

99.    Together with its acquisition of Golden West, Wachovia itself became exposed to substantial losses, as the subprime mortgage industry suffered an immense collapse. This over exposure to subprime lending put Wachovia and its stockholders, including the Participants, at substantial risk for massive losses that would be realized once the Company's true financial condition was disclosed.

100.    Nonetheless, Defendants repeatedly issued inaccurate, incomplete and materially misleading statements to Plan participants.

101.    Although they knew or should have known that the Company's stock was artificially inflated, due to: (a) the fact that the Company's acquisition of Golden West exposed the Company to tremendous losses from the meltdown of the subprime housing market; (b) the fact that the Company had failed to adequately and timely record accruals for losses from its exposure to delinquent subprime mortgages; and (c) the fact that the Company had far greater exposure than previously disclosed to anticipated losses and defaults in its home loan portfolio, and although Defendants knew or should have known that that the heavy investment of retirement savings in Company stock would inevitably result in significant losses to the Plan, and consequently, to its participants, Defendants did nothing to protect the heavy investment of Plan participants' retirement savings in Wachovia stock.

**Defendants Disseminated False and
Misleading Information to Participants**

102.    Throughout the Class Period, Wachovia made false and misleading statements to participants regarding its true financial condition and false assurances regarding the sufficiency

of its risk management processes.  These false and misleading statements caused the price of Wachovia stock to be artificially inflated during the Class Period.

103.    On July 20, 2007, Wachovia issued a press release entitled *Wachovia Earns Record $2.34 Billion, EPS Up 4% To $1.22 – Growth Reflects Strength In Market-Related Business And Traditional Banking Market Expansion* reporting that:

> "Our second quarter performance reflects our continued focus on execution in both the traditional banking and markets-related business," said Ken Thompson, Wachovia chairman and chief executive officer.  "All four of our major business delivered double-digit earnings growth, fueled by new markets, revenue growth initiatives and an expended product set.  Especially gratifying is our employees' continuing dedication to providing industry-leading customer service – which generated record loyalty and satisfaction scores this quarter.  The integration of Golden West is proceeding as planned, and we're excited by the cross-sell potential of our expanded platform.  Additionally, our focus on efficiency and risk management continues to provide flexibility for investment for future growth."

104.    Wachovia filed the above July 20 press release with the SEC on its Form 8-K. Because the Form 8-K was incorporated into Plan documents, including but not limited to, the SPD, it constitutes a fiduciary communication under ERISA.

105.    Further, on August 21, 2007, Wachovia issued a press release entitled *Wachovia Corporation Increases Quarterly Dividend 14% to 64 Cents Per Share* assuring the public that Wachovia had in place adequate risk management and assessment processes.  Specifically, the press release stated:

> Wachovia Corporation's (NYSE:WB) board of directors today approved a 14 percent increase in the company's regular quarterly cash dividend to 64 cents per common share, up from the current 56 cents per share.  The new common stock dividend is payable on September 17, 2007, to shareholders of record as of the close of business on August 31, 2007.

> *"**Today's announcement reflects our Board's confidence in Wachovia's capital strength, liquidity, prudent risk profile and our future**," said Ken Thompson, chairman and chief executive officer of Wachovia. "We believe it is important that our shareholders are rewarded on their investment with a growing dividend."*

(Emphasis added).

106.    Wachovia filed the above August 21 press release with the SEC on its Form 8-K. Because the Form 8-K was incorporated into Plan documents, including but not limited to, the SPD, it constitutes a fiduciary communication under ERISA.

107.    Wachovia further concealed its true risks and exposure in the wake of massive sector-wide losses in an October 19, 2007 press release entitled *Wachovia Earns $1.69 Billion, EPS of 89 Cents Per Share - Strength in core banking and brokerage businesses offset by impact of global fixed income market disruption.* This press release stated in relevant part:

> Wachovia Corp. (NYSE:WB) today reported net income of $1.69 billion, or 89 cents per share, in the third quarter of 2007 compared with $1.88 billion, or $1.17 per share, in the third quarter of 2006.
>
> After-tax net merger-related expenses amounted to 1 cent per common share in the third quarter of 2007 and 2 cents per common share in the third quarter of 2006. Excluding these expenses, earnings were $1.71 billion, or 90 cents per share, in the third quarter of 2007 and $1.90 billion, or $1.19 per share, in the third quarter of 2006.
>
> "I'm very proud of our ability to provide capital, liquidity and advice to our customers and peers in the face of the disruption in the fixed income markets in the third quarter. These conditions clearly had a disappointing impact on the results of market-oriented businesses, but the strength in our core banking and brokerage businesses continued to serve us very well," said Ken Thompson, Wachovia chairman and chief executive officer. "***Our loan and deposit trends were solid, and our retail brokerage performance was strong – and poised for even more growth*** as our A.G. Edwards colleagues join our team. Additionally, the first of our World Savings branch and deposit conversions was completed successfully last weekend, and going forward, attention in our expanded platform returns fully to sales production. ***While***

*the impact of the market disruption was significant, it's worth noting that the majority of the lower market valuations in the third quarter largely arose from a repricing of risk in the marketplace and do not reflect deterioration in the underlying credit quality of the assets in our leveraged finance and commercial real estate securitization businesses.* Looking ahead, we're taking the appropriate steps to ensure that as markets remain unsettled, we focus intently on actively managing our exposures and controlling costs. Longer term, we believe the challenges of the third quarter will be an advantage to companies like Wachovia with strong capital and liquidity positions and a clear understanding of the needs of customers and investors."

(Emphasis added).

108.    Wachovia filed the above October 19 press release with the SEC on its Form 8-K. Because the Form 8-K was incorporated into Plan documents, including but not limited to, the SPD, it constitutes a fiduciary communication under ERISA.

## Wachovia Begins To Disclose The Truth

109.    It was not until April 14, 2008 that Wachovia began revealing the true and actual extent of its losses.  In an April 14, 2008 press release issued by Wachovia entitled *Wachovia Reports 1st Quarter Results; Announces Initiatives to Further Enhance Capital Base and Flexibility*, Wachovia announced that it was recording a net loss of $350 million or $393 million (after preferred dividend).  The press release reported in relevant part:

Wachovia today announced a series of actions to further enhance its capital base and operational flexibility, and updated its credit reserve modeling to reflect greater emphasis on forecasted changes in customer behavior assuming continued house price depreciation. These actions include:

- Plans to raise capital through a public offering of common stock and perpetual convertible preferred stock;
- Lowering the quarterly common stock dividend, which preserves $2.1 billion of capital annually, to build capital ratios and provide more operational flexibility. The board of directors declared a quarterly common stock dividend of $0.375 cents per common share, payable on June 16, 2008, to stockholders

31

of record on May 30, 2008. This dividend level is consistent with Wachovia's capital needs and growth opportunities for each of its business segments, and with an anticipated 40 percent to 50 percent cash payout ratio over the intermediate horizon; and

• The update in the credit reserve modeling in response to the current and forecasted market environment and its effect on consumer behavior, particularly in stressed markets, resulting in a significant increase in the first quarter 2008 provision for credit losses. In addition, the scope of credit disclosures was increased to provide enhanced insight into the payment option consumer real estate portfolio.

In addition, Wachovia reported a first quarter 2008 net loss of $350 million before preferred dividends, or a net loss available to common stockholders of $393 million, (20 cents per common share). *These results, which reflect higher credit costs and the continued disruption in the capital markets,* compared with earnings of $2.30 billion, or $1.20 per share, in the first quarter of 2007.

While solid underlying performance was overshadowed by market disruption-related valuation losses of $2.0 billion, Wachovia generated total revenue of $7.9 billion on higher loans and deposits and strength in fiduciary and asset management fees, brokerage commissions and traditional banking fees, including the impact of the A.G. Edwards acquisition.

"*I'm deeply disappointed with our first quarter results,* but I am confident we're taking prudent and appropriate actions in this challenging period to restore Wachovia to a more profitable path. *The precipitous decline in housing market conditions and unprecedented changes in consumer behavior prompted us to update our credit reserve modeling and rely less heavily on historical trends to forecast losses.* As a result, we have substantially increased our reserves," said Ken Thompson, Wachovia's chief executive officer. "*The most painful decision was to reduce the dividend because it adversely affects our shareholders.* But we believe the long-term benefit to shareholder value outweighs the disadvantage of the dividend reduction as we fortify our balance sheet against continued instability in the housing and capital markets."

(Emphasis added).

110.   Upon this news, Wachovia common stock closed at a trading price of $25.55 on April 14, 2008, approximately 55% from its closing price of $56.65 per share on January 23,

2008, the first day of the Class Period.

111.    Moreover, a July 9, 2008 Reuters news article entitled *Wachovia names Steel CEO, sees loss* reported that:

> Wachovia…said mortgage and legal problems would result in a $2.6 billion to $2.8 billion second-quarter loss, much larger than many analysts expected.
>
> ***The [housing] crisis has hit Wachovia hard. A $24.2 billion purchase in 2006 of California mortgage specialist Golden West Financial Corp saddled it with $121 billion of poorly performing home loans -- the main reason for the projected quarterly loss.***

(Emphasis added.)

112.    As James Ellman, president of hedge fund Seacliff Capital in San Francisco, responded to this news, "At least now the market knows how big the losses are going to be and having a number is better than having no number."

113.    Since the beginning of the Class Period, Wachovia common stock has plummeted in value approximately **84%** from its trading price on the first day of the Class Period. As a result of the enormous erosion of the value of Wachovia stock, the Participants, the retirement savings of whom was heavily invested in Wachovia stock, suffered unnecessary and unacceptable losses.

## Defendants Knew or Should Have Known That Wachovia Stock Was An Imprudent Investment For The Plan, Yet Mislead Plan Participants

114.    Through their high ranking positions within the Company - especially the Director Defendants and members of the Benefits Committee, Defendants knew or should have known of the existence of the above-mentioned problems.  Indeed, as one article pointed out two days after the acquisition of Golden West was announced:

Some analysts and investors, though, aren't quite sold on the deal's merits.   At least two analysts downgraded Wachovia's stock Monday, and investors pushed the shares down 6.7% to $55.42.

The acquisition of the mortgage lender comes at a time when many real estate markets in the USA have cooled.   With housing prices softening and interest rates rising, mortgage lenders such as Golden West may be at risk for losses.

Over the past few years, consumers have flocked to adjustable-rate mortgages - Golden West's core business – whose rates rise with interest rates.   But mortgage applications have slowed in recent months.

Meanwhile, the risk of default is increasing.   "where (the deal) is a success for Wachovia or not is going to be pretty strongly tied to what happens to the California housing market," says Brian Shullaw, a senior analyst at SNL Financial.   "If default rates go up, then that's not going to be good for Wachovia."

115.   Kathy Chu, *Wachovia sees deal as fortification*, USA TODAY (May 9, 2006), available at http://www.usatoday.com/money/industries/banking/2006-05-07-wachovia-golden-west_x.htm (accessed on April 15, 2008).

116.   Analysts never approved of Wachovia's purchase of Golden West.   "Even before the mortgage industry went splat, skeptics felt Wachovia CEO Ken Thompson was paying too much for Golden West's abundance of pay-option adjustable-rate mortgages, or option ARMSs." Jia Lynn Yang, *Wachovia's Big Mortgage Buy*, Fortune (March 3, 2008).

117.   Defendants knew or should have known of the Company's substantial exposure to subprime mortgage-related losses, which would, undoubtedly, impact the Company stock price – and, accordingly, Plan participants' retirement savings—once the truth became known.

118.   Yet, during the Class Period, the Company concealed, distorted and misrepresented its true financial condition, thereby precluding Plan participants from properly assessing the prudence of investing in Company stock.

119.    As a result of Defendants' knowledge of and, at times, implication in creating and maintaining public misconceptions concerning the true financial health of the Company, any generalized warnings of market and diversification risks that Defendants made to the Plan's participants regarding the Plan's investment in Wachovia stock did not effectively inform the Plan's participants of the past, immediate, and future dangers of investing in Company stock.

120.    In addition, upon information and belief, Defendants failed to adequately review the performance of the other fiduciaries of the Plan to ensure that they were fulfilling their fiduciary duties under the Plan and ERISA.  Defendants also failed to conduct an appropriate investigation into whether Wachovia stock was a prudent investment for the Plan and, in connection therewith, failed to provide the Plan's participants with information regarding Wachovia's problems so that participants could make informed decisions regarding whether to include Wachovia stock in the Plan.

121.    An adequate (or even cursory) investigation by Defendants would have revealed to a reasonable fiduciary that investment by the Plan in Wachovia stock, under these circumstances – with undisclosed, substantial exposure to subprime mortgage-related losses— was clearly imprudent.  A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made different investment decisions.

122.    Because Defendants knew or should have known that Wachovia was not a prudent investment option for the Plan, they had an obligation to protect the Plan and their participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in Wachovia stock.

123.    Defendants had available to them several different options for satisfying this duty, including, among other things: making appropriate public disclosures as necessary; divesting the Plan of Wachovia stock; discontinuing further contributions to and/or investment in Wachovia stock under the Plan; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan; and/or resigning as fiduciaries of the Plan to the extent that as a result of their employment by Wachovia they could not loyally serve the Plan and its participants in connection with the Plan's acquisition and holding of Wachovia stock.

124.    Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses resulting from the Plan's investment in Wachovia stock. In fact, the Defendants continued to invest and to allow investment of the Plan's assets in Company stock even as Wachovia's problems came to light.

**Defendants Regularly Communicated with Participants Regarding**
**Investments in Wachovia Stock, Yet Failed to Disclose the**
**Imprudence of the Plan's Investment in Wachovia Stock**

125.    Upon information and belief, Wachovia and certain other Defendants regularly communicated with employees, including participants in the Plan, about the performance, future financial and business prospects of the Company whose common stock was, one of, if not the, largest assets of each of the Plan.  During the Class Period, upon information and belief, the Company fostered a positive attitude toward the Company's stock, and/or allowed participants in the Plan to follow their natural bias towards investment in the equities of their employer by not disclosing negative material information concerning investment in the Company's stock.  As such, participants in the Plan could not appreciate the true risks presented by investments in the

Company's stock and therefore could not make informed decisions regarding their investments in the Plan.

126.    Relevant SEC filings and related Company statements and releases issued during the Class Period were inaccurate, incomplete and materially misleading, causing the Plan's participants to purchase, and to hold and maintain, investments in the Plan in Wachovia stock.

127.    These statements, their related press releases, and substantially similar SEC filings and press releases issued during the Class Period were inaccurate, incomplete and materially misleading in that they failed to properly inform the Plan's participants of the Company's ever-increasing problems with its key product lines, including loan defaults, liquidity concerns and shrinking demand. These statements were made with the implicit knowledge that the Plan's participants would rely upon such information in determining whether to maintain investment in Wachovia stock.

## REMEDIES FOR DEFENDANTS' BREACHES OF THEIR FIDUCIARY DUTIES

128.    Defendants breached their fiduciary duties in that they knew or recklessly disregarded the facts as alleged above, and therefore knew or recklessly disregarded that the Plan's assets should not have been so heavily invested in the Company Stock Fund. As a consequence of the Defendants' breaches, the Plan suffered significant losses.

129.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed fiduciaries . . . to make good to such plan any losses to the plan." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate."

130.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the Plan's assets to what they would have been if the plan had been properly administered.

131.    Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of:  (1) a monetary payment to the Plan in the amount of the losses to the Plan resulting from the breaches of fiduciary duties alleged above and to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA § 409(a) and 502(a)(2)-(3), 29 U.S.C. § 1109(a) and 1132(a)(2)-(3); (3) reasonable attorneys' fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs; (5) interests on these amounts, as provided by law; (6) adequate and accurate disclosure of all fees and expenses associated with the administration and management of the Plan; and (7) such other legal or equitable relief as may be just and proper.

132.    Each Defendant is personally liable and jointly liable for the acts of the other Defendants as a co-fiduciary.

## COUNT I

### Failure to Prudently and Loyally Manage the Plan's Assets
### Breaches of Fiduciary Duties in Violation of ERISA § 404
### (Against All Defendants)

133.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

134.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

135.    Defendants were responsible for the selection, maintenance and monitoring of the Plan's investment options, including the option to purchase and to hold investments in the Company Stock Fund.

136.    Defendants exercised discretionary authority and/or control over management of the Plan or disposition of the Plan's assets and were, during the Class Period, responsible for ensuring that investment options made available to Participants were prudent. Defendants were responsible for ensuring that all investments in the Company Stock Fund in the Plan were prudent, and are liable for losses incurred as a result of such investments being imprudent.

137.    Defendants should have known that throughout the Class Period, Wachovia issued false and misleading statements regarding its exposure to subprine lending and the affect thereof on the Company's financial condition. Defendants should have further known that Wachovia failure to disclose its true financial condition artificially inflated the Company's reported sales and revenue, as well as the value of its common stock.

138.    Based upon the insider sales of Wachovia common stock, the Plan's fiduciaries should have recognized the imprudence of Participants continuing their investments in Wachovia common stock.

139.   Participants, in contrast, invested in Wachovia common stock relying on the Company's financial misstatements and omissions and Defendants' continued offering of Wachovia common stock as an investment option under the Plan.  Because Defendants never disclosed adverse, material information to Participants, at the time that Participants made such investments, Participants were without knowledge of the facts concerning the inaccurate statements and omissions alleged herein which revealed the imprudence of investing in the Wachovia common stock.

140.   In direct violation of their duty of loyalty to the Plan and their members, Defendants failed to diverge from the Plan's documents and/or directives that they reasonably should have known would lead to an imprudent result or would otherwise harm Participants. Defendants, either themselves or through persons they direct or control, blindly followed the Plan's documents and directives, leading to an imprudent result that harmed the Participants.

141.   Defendants breached their duties to prudently and loyally manage the assets of the Plan.   During the Class Period, upon the exercise of reasonable care, Defendants should reasonably have known that investment in the Company Stock Fund was imprudent in that any such investment was unsuitable and inappropriate for either Participant contributions or Company matching contributions to the Plan.  During the Class Period, Defendants, in violation of their fiduciary duties, continued to offer the Company Stock Fund as an investment option for the Plan and to direct and approve the Plan's investment in the Company Stock Fund, instead of other investments as permitted by the Plan.  Despite the imprudence of any investment in the Company Stock Fund during the Class Period, Defendants failed to take adequate steps to prevent the Plan, and indirectly the Participants, from suffering losses as a result of the Plan's investment in the Company Stock Fund.

142.    Defendants also breached their duty of loyalty by failing to administer the Plan with single-minded devotion to the interests of the Plaintiff and the members of the Class, regardless of Defendants' own interests.

143.    Defendants also breached their fiduciary duties by failing to disclose that they had failed prudently and loyally to manage the assets of the Plan in the exercise of their discretion with respect to the Company Stock Fund as an investment option in the Plan.

144.    As a direct and proximate result of Defendants' breaches of their fiduciary duties owed to the Plaintiff and the Class, the Plan, and indirectly the Plaintiff and the members of the Class, suffered damages for which Defendants' are liable.

## COUNT II

### Failure to Monitor the Plan and to Provide the Administrator
### Of the Plan and Other Fiduciaries With Accurate Information
### Breaches of Fiduciary Duties in Violation of ERISA § 404
### (Against Wachovia, Director Defendants and the Benefits Committee)

145.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

146.    During the Class Period, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  By virtue of their fiduciary responsibilities, Defendants were bound to monitor the other fiduciaries and to provide them with information sufficient to perform their duties overseeing the Plan and their investments.

147.    The Director Defendants maintained discretionary authority and control with respect to appointing the members of the Benefits Committee to manage and evaluate investment of the Plan's assets.  Accordingly, the Director Defendants breached their duties to monitor and inform by:

(a)    Failing to ensure that the Benefits Committee, as a monitored fiduciary,

41

had access to knowledge about the Company's exposures to a deteriorating housing market and losses related to subprime lending, as alleged above, which made the Company Stock Fund an imprudent retirement investment;

(b)    Failing to ensure that the Benefits Committee appreciated the increased risk posed by the significant investment by rank and file employees in the Company Stock Fund; and

(c)    Failing to disclose to the Benefits Committee accurate information about the operations and financial results of Wachovia that Defendants reasonably should have known the monitored fiduciaries needed to make sufficiently informed decisions about what investment options the Plan should continue to offer.

148.    At the same time, upon information and belief, the Benefits Committee maintained discretionary authority and control with respect to appointing investment managers to manage, acquire, and dispose of the assets of the Plan.  Accordingly, the Benefits Committee breached its duties to monitor and inform by:

(a)    Failing to ensure that appointed investment managers, as monitored fiduciaries, had access to knowledge about the Company's operations, financial results and losses incurred by Wachovia through subprime lending, as alleged above, which made the Company Stock Fund an imprudent retirement investment;

(b)    Failing to ensure that the investment managers appreciated the increased risk posed by the significant investment by rank and file employees in the Company Stock Fund; and

(c)    Failing to disclose to the investment managers accurate information about the operations and financial results of Wachovia that Defendants reasonably should have known

42

the monitored fiduciaries needed to make sufficiently informed decisions about what investment options the Plan should continue to offer.

149.    As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly the Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

## COUNT III

**Failure to Provide Complete and Accurate
Information to the Plan's Participants and Beneficiaries
Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405
(Against All Defendants)**

150.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

151.    During the Class Period, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

152.    During the Class Period, Defendants' fiduciary duties bound them to ensure that communications by and about the Plan and their assets were truthful, complete and not misleading, including information concerning the investment options offered under the Plan.

153.    Throughout the Class Period, Defendants failed to provide participants in the Plan with complete and accurate information regarding the Company's operations, financial conditions, and exposure to subprime lending necessary for participants in the Plan to accurately assess the quality of an investment in the Company Stock Fund.  Instead, Defendants conveyed false and misleading material information to the investing public and to the Plaintiff and the Class, regarding the soundness of Wachovia common stock and the prudence of investing retirement savings in the Company Stock Fund.  Because large percentages of the assets of the

Plan were invested in the Company Stock Fund during the Class Period, losses therefrom materially affected the value of Participants' retirement assets.

154.    Defendants' misrepresentations and omissions were material to the determination of Plaintiff and members of the Class whether investing in or maintaining their investments in the Company Stock Fund was prudent.    As such, Plaintiff and members of the Class are presumed to have relied to their detriment on Defendants' misleading statements and omissions.

155.    As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly the Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

### COUNT IV

**Failure to Act Exclusively in the Interests of the Plan's Participants
Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405
(Against All Defendants)**

156.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

157.    During the Class Period, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

158.    Defendants were duty bound to act with undivided loyalties to the Plan, binding them to discharge their responsibilities solely in the interest of Participants and for the exclusive purpose of providing benefits thereto.

159.    Defendants breached their duty of loyalty by:

(a)    Failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in the Company Stock Fund;

(b)    Failing to notify appropriate federal agencies, including the United States

Department of Labor, of the facts and transaction which made the Company Stock Fund an unsuitable investment for the Plan;

(c)     Failing to take such other steps as were necessary to ensure that the interests of Plaintiff and members of the Class were loyally and prudently served;

(d)     With respect to each of the failures listed in the preceding subparagraphs, Defendants failed adequately to inform Plaintiff and members of the Class to prevent general investors, creditors and others from discovering the Company's financial and operational weaknesses as well as its losses incurred through heavy subprime mortgage lending and the Golden West acquisition; and

(e)     By otherwise placing the interests of Wachovia and themselves above the interests of the Participants with respect to the Plan's investment in the Company Stock Fund, by among other things, keeping the Plan's assets heavily invested in Wachovia common stock when it was imprudent to do so –  rather than divesting the Plan's investments in Wachovia common stock.

160.    As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly the Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

## COUNT V

**Co-Fiduciary Liability**
**Breaches of Fiduciary Duties in Violation of ERISA § 405**
**(Against Officer Defendants, Director Defendants, and the Plan Committee)**

161.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

162.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

163.    As alleged herein, Wachovia, through its officers and employees, such as members of the Benefits Committee failed to provide material information to the Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices to the detriment of Plaintiff and members of the Class, and, thus, knowledge of such practices is imputed to these Defendants as a matter of law. In addition, as alleged herein on information and belief, Wachovia and the other Defendants named in this Count participated in and/or knew about the Company's misrepresentations regarding its materially overstated sales and earnings projections for the fiscal year 2008 and the amount of losses recorded by the Company. Thus, these Defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Wachovia common stock as an investment for the Participants' retirement assets.

164.    Despite this knowledge, the Defendants named in this Count knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Wachovia common stock during the Class Period. Defendants did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in

Wachovia common stock in the manner alleged herein in violation of ERISA § 405(a)(1)(A).  In addition, these same Defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Wachovia common stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

165.    In further violation of ERISA § 405(a)(1)(C), the Defendants named in this Count also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying the significance of Wachovia's exposure to a deteriorating mortgage market and losses, risks and exposures associated with the Golden West acquisition.

166.    In addition, the Defendants named in this Count enabled the imprudent asset management decisions of any and all other Defendants – including any appointed fiduciaries of the Plan – who lacked knowledge of the circumstances rendering Wachovia common stock imprudent, by failing to provide such persons with complete and accurate information regarding Wachovia common stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper business practices, so that these other Defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Wachovia common stock.  In so doing, these Defendants breached ERISA § 405(a)(1)(B).

167.    Further, through their failure to properly and effectively monitor their appointees on the Benefits Committee and investment managers, and remove those fiduciaries whose

performance was inadequate as alleged above, the Defendants named in this Count enabled these appointed fiduciaries' imprudent management of the Company Stock Fund in the Plan.

168.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants, lost a significant portion of their retirement investment.

169.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

### Prohibited Transactions in Violation of ERISA § 406
### (Against All Defendants)

170.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as fully set forth herein.

171.    By virtue of all the facts and events alleged herein, Defendants, in connection with their actions and omissions in authorizing and causing the Plan to continue to offer the Company Stock Fund as an investment option during the Class Period and in permitting Plaintiff and members of the Class to invest in the Company Stock Fund at a time when Defendants reasonably should have known that Wachovia operational and financial health were deteriorating and Wachovia was sustaining heavy losses as a result of a failing housing market – material facts undisclosed or misrepresented to the public – and that as a result, the prices per share at which the Company Stock Fund was acquiring Wachovia common stock grossly exceeded fair market value, caused the Plan to engage in transactions that constituted direct or indirect sales or exchanges of property between the Plan and the party-in-interest, in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

172.    Because the prices Defendants caused the Company Stock Fund to pay for such shares were materially, artificially inflated, exceeding fair market value, the prohibited transactions are not exempt under the provisions of ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1).

173.    Wachovia is liable for this violation as a "party in interest" as defined in ERISA § 3(14)(c) for participating in the prohibited transactions.

174.    During the Class Period, Wachovia common stock was artificially inflated in value such that Defendants continued to engage in prohibited transactions by causing the Plan to pay artificially inflated prices for the Wachovia common stock.

175.    During the Class Period, the Plan invested millions of dollars in both participant and company-matching contributions in Wachovia common stock, at artificially inflated prices. The Plan and the Participants thus over-paid for their "participation interests" in the Plan.

176.    Because the Plan's acquisitions of Wachovia common stock at artificially inflated prices were prohibited transactions, a *per se* violation of ERISA § 406(a), 29 U.S.C. § 1106(a), under ERISA §§ 409(a) and 502(a)(2)-(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiff, on behalf of himself and the members of the Class, seeks to rescind all transactions purchasing shares of the Company Stock Fund.

177.    Further, to restore the Plan and their participants and beneficiaries to the positions they would have been in had Defendants not engaged in the prohibited transactions, the Plan are entitled to recover the amount that the contributions used to purchase Wachovia commons stock for the Company Stock Fund would have earned had such amounts been invested in suitable investment options.

## SECTION 404(C) DEFENSE INAPPLICABLE

178.    As a direct or proximate result of Defendants breaches of the fiduciary duties they owed to Plaintiff and members of the Class, the Plan suffered losses, and the Plaintiff and the members of the Class suffered losses when substantial assets in the Plan were invested in the Company Stock Fund during the Class Period.

179.    As to contributions invested in the Company Stock Fund, Defendants were responsible for the prudence of investments offered under the Plan unless Participants, themselves, effectively exercised informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated thereunder.

180.    Defendants, however, did not comply with those provisions.  Rather than taking the necessary steps to ensure effective participant control by complete and accurate disclosure of material information, Defendants did the opposite.  As a consequence, Participants did not have informed control over the assets of the Plan that were invested in the Company Stock Fund, and Defendants remained entirely responsible for ensuring that such investments were and remained prudent.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of other members of the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

B.    Declaring that Defendants, together and individually, breached their fiduciary duties under ERISA to Plaintiff and members of the Class;

C.      Declaring that Defendants, together and individually, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(1)(B);

D.      Compelling Defendants to reimburse the Plan for all losses thereto, resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the assets of the Plan, and to restore to the Plan all profits Defendants made through the use of the assets of the Plan, and to restore to the Plan all investment profits that Plaintiff and member of the Class would have made if Defendants had fulfilled their fiduciary obligations;

E.      Enjoining Defendants, together and individually, from any further violations of their fiduciary duties under ERISA;

F.      Awarding actual damages in the amount of any losses the Plan suffered, to be allocated among the individual accounts of Plaintiff and members of the Class in proportion to the losses of those accounts;

G.      Awarding Plaintiff and members of the Class damages as a result of the wrongs complained of herein, with pre-judgment and post-judgment interest;

H.      Awarding Plaintiff and members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

I.      Awarding Plaintiff and members of the Class such other and further relief as the Court may deem just and proper.

Dated: July 18, 2008

HARWOOD FEFFER LLP

Robert I. Harwood (RH-3286)
Jeffrey M. Norton (JN-4827)
Roy Shimon (RS-7521)
488 Madison Ave., 8th Floor
New York, New York 10022
Tel: 212-935-7400
Fax: 212-753-3630

GLANCY BINKOW & GOLDBERG LLP
Michael Goldberg, Esq.
Richard A. Maniskas, Esq.
1801 Avenue of The Stars, Suite 311
Los Angeles, CA 90067
Tel: 310-201-9150
Fax: 310-201-9160

*Attorneys For Plaintiff*